UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

POORANDEO GOBIN, A41-603-310,

                     Petitioner,

          -v-                                    13-CV-241-JTC

ERIC H. HOLDER, Attorney General
of the United States;

JANET NAPOLITANO, Secretary of
United States Department Head of
Homeland Security;

MICHAEL PHILIPS, Field Office Director
for Detention and Removal, Buffalo Field
Office, Bureau of Immigration and Customs
Enforcement;

DEPARTMENT OF HOMELAND SECURITY;
and

TODD TRYON, Facility Director, Buffalo
Federal Detention Facility,

                     Respondents.

_____

## INTRODUCTION

      Petitioner Poorandeo Gobin, an alien under a final order of removal from the United

States, has filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C.

§ 2241 seeking release from detention in the custody of the United States Department of

Homeland Security, Immigration and Customs Enforcement (collectively, "DHS"), pending

the execution of a final immigration order of removal issued against him.  Item 1.  As

directed by this court's order entered March 28, 2013 (Item 3), respondent[1] has submitted an answer and return (Item 5), along with an accompanying memorandum of law (Item 6), in opposition to the petition.

For the reasons that follow, the petition is denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner, a native and citizen of Guyana, was admitted to the United States, at New York, New York, on or about October 26, 1987, as a lawful permanent resident. *See* Item 5-2 (Exh. A, attached to Declaration of DHS Deportation Officer Juanita Payan, Item 5-1), pp. 2, 4. DHS records reflect that petitioner was convicted of the following criminal offenses while present in the United States:

1.      On or about April 19, 1995, petitioner was convicted of Attempted Criminal Contempt (2 counts).

2.      On or about January 12, 2010, petitioner was convicted in New York State Supreme Court, Queens County, on a plea to the charge of Attempted Burglary in the 2nd Degree: Illegal Entry - Dwelling, a Class D Felony under N.Y. Penal Law § 110-140.25(2). He was sentenced to a three-year term of imprisonment and two years of post-release supervision.[2]

---

[1] The only proper respondent in this proceeding is Todd Tryon, Assistant Field Office Director, Immigration and Customs Enforcement, Buffalo, New York Office, and Director of the Buffalo Federal Detention Facility, as he is "the person who has custody over [the petitioner]." 28 U.S.C. § 2242; *see also* § 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained."); *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).

[2] Petitioner filed a motion pursuant to New York Criminal Procedure Law ("NYCPL") § 440.20 seeking to vacate his judgment of conviction and sentence on the ground that his plea subjected him to deportation, amounting to cruel and unusual punishment in violation of the Eighth Amendment. This motion was denied by Acting State Supreme Court Justice Dorothy Chin-Brandt in a Decision and Order dated December 5, 2012 (*see* Item 5-2, pp. 23-27). Petitioner's motion for leave to appeal the denial of

*See* Item 5-2, pp. 8, 16, 18, 24.

On May 12, 2010, while incarcerated at the Mid-State Correctional Facility in Marcy, New York, in the custody of the New York State Department of Correctional Services ("DOCS," reorganized in 2011 and renamed the Department of Corrections and Community Supervision ("DOCCS")), petitioner was served with a Notice to Appear for Removal Proceedings under Section 240 of the Immigration and Nationality Act ("INA"). *Id.* at 16-17.   The Notice to Appear charged petitioner with being removable from the United States pursuant to INA § 237(a)(2)(A)(iii) (8 U.S.C. § 1227(a)(2)(A)(iii)), as an alien who has been convicted of an "aggravated felony" as defined in INA § 101(a)(43)(G) (theft offense or burglary offense for which the term of imprisonment at  least 1 year was imposed), a law relating to a theft offense.  *Id.* at 16-17.  On July 14, 2010, DHS served petitioner with Additional Charges of Inadmissibility/Deportability (Form I-261), charging him with being removable pursuant to INA § 237(a)(2)(A)(iii), as an alien who had been convicted of an attempt or conspiracy to commit an aggravated felony, as described in INA § 101(a)(43)(U).  *See id.* at 14-15.

On August 4, 2011, an immigration judge ("IJ") ordered petitioner removed from the United States to Guyana.  *See id.* at 8.  Petitioner appealed the IJ's order to the Board of Immigration Appeals ("BIA"), and the removal order became final on December 12, 2011, when the BIA dismissed the appeal.  *Id.* at 13.

---

his § 440.20 motion remains pending with the Appellate Division, Second Department.  *Id.* at 28.  Petitioner also filed a separate motion under NYCPL § 440.10(h) to vacate his conviction on grounds that his plea was not entered knowingly and voluntarily; this motion was denied by Judge Chin-Brandt in a Decision and Order dated April 5, 2013.  *Id.* at 29-33.

On July 27, 2012, upon his release from the custody of DOCCS, petitioner was received into DHS custody and taken to the Buffalo Federal Detention Facility in Batavia, New York. *Id.* at 8, 20. On July 31, 2012, petitioner was served with a formal Warning for Failure to Depart (Form I-229(a)), along with an instruction sheet listing actions to be completed within 30 days to assist DHS in obtaining a travel document for his removal from the United States. *Id.* at 11-12. The warning form advised petitioner, among other things, of penalties under INA § 243 for conniving or conspiring to prevent or hamper his departure from the United States, and also advised him that, pursuant to INA § 241(a)(1)(C), failure or refusal to comply with the requirements for removal may result in the extension of the removal period and subject him to further detention. *Id.*

On August 2, 2012, DHS sent a presentation packet to the Embassy of Guyana ("Embassy") in Washington, D.C., requesting that a travel document be issued for petitioner's removal. *Id.* at 20- 22. According to DHS records, the deportation officer assigned to petitioner's case spoke to an Embassy official on August 20, 2012, and was advised that Guyana will not be issuing travel documents until the matters pertaining to petitioner's NYCPL § 440 motion to vacate his criminal conviction have been resolved. *See* Item 5-1, ¶ 14.

The submissions on file further reveal that, in accordance with immigration regulations, DHS conducted a 90-day review of petitioner's custody status in October 2012. Item 5-2,  pp. 8-10. Following completion of the review, petitioner was notified that DHS had determined to continue his detention, based upon the totality of information available in petitioner's file indicating that he would pose a threat to the community and a risk of flight

-4-

if he were to be released from custody.  *Id.* at 9.  Further reviews of petitioner's custody status have been conducted by DHS Headquarters Post-Order Custody Review Unit ("HQPOCRU") in January and April, 2013, following which petitioner was notified that DHS determined to continue his detention in DHS custody.  *Id.* 2-5.

Meanwhile, on March 5, 2013, petitioner filed this action seeking habeas corpus relief pursuant to 28 U.S.C. § 2241 on the ground that his continued detention in post-removal-order custody is unlawful since it has exceeded the presumptively reasonable six-month period established under the due process standards set forth by the United States Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001).  Upon full consideration of the matters set forth in the submissions on file, and for the reasons that follow, the petition is denied.

## DISCUSSION

Petitioner challenges his continued detention by way of habeas corpus review under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.' "  *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)); *see also Zadvydas*, 533 U.S. at 687 (petition under § 2241 is the basic method for statutory and constitutional challenges to detention following order of removal).

Matters pertaining to the detention of aliens pending the completion of immigration removal proceedings, and pending removal following the entry of a final order of removal, are governed by two separate provisions of the INA–respectively, INA § 236, which authorizes the arrest and detention of an alien on warrant pending a decision on whether

the alien is to be removed from the United States, and INA § 241, which authorizes

detention of aliens after the issuance of a final removal order.  In this case, petitioner's

detention at the time he filed his habeas petition was pursuant to INA § 241(a), which

requires the Attorney General to accomplish an alien's removal from the United States

within a period of ninety days (the "removal period"), commencing on the latest of the

following dates:

> (i)  The date the order of removal becomes administratively final.
> (ii)  If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii)  If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Detention during the ninety-day removal period is mandatory.  *See* INA § 241(a)(2)

("During the removal period, the Attorney General *shall* detain the alien.").  The statute also

authorizes the Attorney General to continue detention of criminal aliens–*i.e.*, aliens ordered

removed due to conviction of a crime (like petitioner here)–beyond the expiration of the

ninety-day removal period if it is determined that the alien "is a risk to the community or

unlikely to comply with the order of removal …."  INA § 241(a)(6).[3]

---

[3]INA § 241(a)(6) provides in full as follows:

An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2),or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

In *Zadvydas*, the Supreme Court was presented with the challenge of reconciling this apparent authorization of indefinite detention with the Fifth Amendment's prohibition against depriving a person of their liberty without due process.  The Court determined that INA § 241(a) authorizes detention after entry of an administratively final order of deportation or removal for a period that is "reasonably necessary" to accomplish the alien's removal from the United States.  *Zadvydas*, 533 U.S. at 699-700.  Recognizing the practical necessity of setting a "presumptively reasonable" time within which to secure removal, the court adopted a period of six months "for the sake of uniform administration in the federal courts …."  *Id.* at 701.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.  And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink.  This 6-month presumption, of course, does not mean that every alien not removed must be released after six months.  To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*

To comply with the Supreme Court's ruling in *Zadvydas*, the Attorney General has promulgated regulations providing for review of the custody status of aliens who have been detained for more than six months after the issuance of a final order of removal.  Under these regulations, a detainee who has been in post-removal-order custody for more than six months may submit a written request for release to DHS Headquarters Post-order Detention Unit ("HQPDU") setting forth "the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future."

8 C.F.R. § 241.13(d)(1).   The written request must include "information sufficient to establish his or her compliance with the obligation to effect his or her removal and to cooperate in the process of obtaining necessary travel documents."   8 C.F.R. § 241.13(d)(2).

In reviewing the request for release, the agency is required to consider "all the facts of the case including, but not limited to," the following:

> [T]he history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question.  Where the Service is continuing its efforts to remove the alien, there is no presumptive period of time within which the alien's removal must be accomplished, but the prospects for the timeliness of removal must be reasonable under the circumstances.

8 C.F.R. § 241.13(f).

If the agency finds that the alien has met the burden of demonstrating good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, and that there are no special circumstances justifying continued detention, then it must order the detainee released.  8 C.F.R. § 241.13(g)(1).  However, the agency may impose certain conditions of release on the alien, such as requiring a bond, attendance in a rehabilitative program, or submission to a medical or psychiatric examination.  *See* 8 C.F.R. §§ 241.5(b), 241.13(h)(1); *see also Zadvydas*, 533 U.S. at 695 ("[W]e nowhere deny the right of Congress to remove aliens, to subject them to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions.").

As set forth above, in this case petitioner' post-removal-order detention began on July 27, 2012, when he was taken into DHS custody upon his release from the custody of DOCCS.   As an alien under a final order of removal, he was subject to mandatory detention for the 90-day removal period pursuant to INA § 241(a).   Thereafter, his continued detention has been authorized by INA § 241(a)(6), since he is a criminal alien determined by DHS upon custody status review to pose a risk to the community.

Under *Zadvydas*, the first six months of detention following a final removal order are "presumptively reasonable."   *Zadvydas*, 533 U.S. at 701.   Once the six-month period has passed, the burden shifts to the alien detainee to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."   *Id.*   Only if the alien makes this showing does the burden shift back to the government, which "must respond with evidence sufficient to rebut" the alien's showing that there is no significant likelihood that he or she will be deported in the reasonably foreseeable future.   *Id.*; *see also Wang*, 320 F.3d at 146 ("reasonable foreseeability" test of *Zadvydas* "articulates the outer bounds of the Government's ability to detain aliens (other than those serving criminal sentences) without jeopardizing their due process rights.").

Upon review of the submissions on the present petition, the court finds that petitioner has failed to sustain his initial burden under *Zadvydas*.   The petition sets forth no factual basis to substantiate petitioner's belief that there is no significant likelihood he can be removed to Jordan in the reasonably foreseeable future.   He simply alleges that the Embassy "ha[s] not issued any travel documents and there is no certainty as to when, if ever, such papers will be issued."   Item 1, ¶ 16.   However, as discussed above, the request

for a travel document for petitioner remains pending with the Embassy, and there is nothing in the record before the court to indicate that Guyanese authorities are inclined to deny the request.

To the contrary, the information in the submissions on file indicates that an Embassy official advised DHS in April 2013 that a travel document was being prepared for petitioner's removal, and a meeting had been scheduled to finalize and sign the document. However, in a subsequent communication in May 2013, the Embassy official advised DHS that, pursuant to an internal memorandum of understanding, Guyana would not issue a travel document for petitioner while his litigation in the United States – *i.e.*, his motion for leave to appeal from the denial of the § 440.20 motion challenging his state court conviction and sentence, and the present habeas petition challenging the length of his post-removal-order detention – remains pending.  *See* Item 5-1, ¶ 20.

Several cases within the Second Circuit have held that, when the detention challenged by the habeas petition has been prolonged by the petitioner's own pursuit of judicial review of the final order of removal, the duration of his detention cannot be found to constitute a violation of his rights under the due process clause of the Fifth Amendment. *See, e.g., Doherty v. Thornburgh*, 943 F.2d 204, 211 (2d Cir. 1991) (refusing to find eight-year detention unconstitutional where alien's pursuit of judicial and administrative review caused the delay in removal); *Dor v. District Director, INS*, 891 F.2d 997, 1002 (2d Cir. 1989) (same, but with four-year detention); *see also Khaleque v. Department of Homeland Sec.*, 2009 WL 81318, at *3 (W.D.N.Y. Jan. 9, 2009) (denying alien's habeas petition upon finding that alien "elected to file a petition for review and a motion for a stay of removal"

which "acted to prevent his removal until the Second Circuit issued its mandate").  Although *Doherty* and *Dor* were decided prior to the Supreme Court's determination of a "presumptively reasonable" standard in *Zadvydas*, those cases have been cited with approval by the Second Circuit in post-*Zadvydas* decisions.  *See, e.g., Abimbola v Ridge*, 181 F. App'x 97, 99 (2d Cir.  2006) (petitioner's consistent pattern of seeking to delay removal by filing appeals and petitions for reconsideration amounted to a "self-inflicted wound" precluding a finding of due process violation); *Sanusi v. I.N.S.*, 100 F. App'x 49, 51 (2d Cir. 2004) ("The duration of [petitioner's] detention–approximately six years to the date–is extremely regrettable.  Nevertheless, because the detention has been prolonged primarily by [petitioner]'s pursuit of final judicial review of his claims, we cannot say that this duration in itself violates due process.").

In addition, the available statistical evidence reveals that in recent years, DHS has successfully repatriated significant numbers of aliens to Guyana, indicating no institutional barriers to petitioner's removal.  For example, DHS reports show that in fiscal year ("FY") 2009, a total of 305 aliens were repatriated to Guyana; in FY 2010, 221 aliens were repatriated to Guyana; and in FY 2011, 189 aliens were repatriated to Guyana.  *See* DHS Yearbook of Immigration Statistics: 2011, Table 41: http://www.dhs.gov/yearbook-immigration-statistics-2011-3; Item 5-1, ¶ 21.  These circumstances provide a reasonable basis for DHS's expectation that the verification required for the issuance of a travel document by the Guyanese government can be accomplished within the reasonably foreseeable future following resolution of petitioner's pending request for leave to appeal the denial of his § 440.20 motion, after which time the necessary travel arrangements may be made for petitioner's release from custody and his repatriation to Guyana.

Significantly, petitioner has provided no evidence to contradict this expectation, or to otherwise establish compliance with the requirements of the DHS regulations described above.  Instead, petitioner relies solely on the fact that his detention has exceeded the presumptively reasonable six-month period established in *Zadvydas*.  *See* Item 1, ¶¶ 16, 18, 22, 29.  However, several cases decided within this district have found the habeas petitioner's assertion as to the unforeseeability of removal, supported only by the mere passage of time, insufficient to meet the petitioner's initial burden to demonstrate no significant likelihood of removal under the Supreme Court's holding in *Zadvydas*.  *See, e.g., Khaleque*, 2009 WL 81318, at *4 (petitioner failed to meet initial burden where the only evidence relied upon was the fact that the Consulate had not responded positively to the request for a travel document); *Kassama v. Dep't of Homeland Sec.*, 553 F. Supp. 2d 301, 306-07 (W.D.N.Y. 2008) (petitioner failed to meet initial burden where there was no evidentiary proof in admissible form to suggest that travel documents would not be issued); *Haidara v. Mule*, 2008 WL 2483281, at *3 (W.D.N.Y. June 17, 2008) (petitioner failed to meet initial burden where he "merely ma[de] the general assertion that he will not be returned to [his country] in the foreseeable future"); *Roberts v. Bureau of Immigration & Customs Enforcement*, 2007 WL 781925, at *2 (W.D.N.Y. Mar. 13, 2007) (petitioner who did not present evidence that his country would not provide travel documents did not meet initial burden of proof.); *Singh v. Holmes*, 2004 WL 2280366, at *5 (W.D.N.Y. Oct. 8, 2004) (petitioner who "failed to submit anything demonstrating that there is no significant likelihood of removal in the reasonably foreseeable future" did not meet initial burden of proof); *see also Juma v. Mukasey*, 2009 WL 2191247, at *3 (S.D.N.Y. July 23, 2009)

(vague, conclusory and general claims that removal is not foreseeable, and that Embassy will not issue travel document in foreseeable future, fails to meet initial burden).

Based on this authority, and upon full consideration of the record presented by way of the parties' submissions, the court finds that petitioner has failed to meet his initial burden under *Zadvydas* to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future …." *Zadvydas*, 533 U.S. at 701. Accordingly, petitioner has failed to demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States" for the purposes of granting habeas corpus relief under 28 U.S.C. § 2241, and his petition must be denied.

## **CONCLUSION**

For the foregoing reasons, the petition is denied, and the case is dismissed. This dismissal is without prejudice to file another petition should it subsequently appear that the presumptively reasonable period of post-removal-order detention has elapsed, and that removal is no longer reasonably foreseeable. *See Andreenko v. Holder*, 2012 WL 4210286, at *5 (W.D.N.Y. Sept. 18, 2012); *Kassama*, 553 F. Supp. 2d at 307.

It is further ordered that certification pursuant to 28 U.S.C. § 1915(a)(3) be entered stating that any appeal from this Judgment would not be taken in good faith and therefore leave to appeal as a poor person should be denied. *Coppedge v. United States*, 369 U.S. 438 (1962).

The Clerk of the Court is directed to enter judgment in favor of respondent, and to close the case.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: July 17, 2013
p:\pending\2013\13-241.2241.july16.2013